WINDOM, Presiding Judge.
Calvin L. Stallworth, currently an inmate on Alabama’s death row at Holman Correctional Facility, appeals the circuit court’s denial of his petition for postconviction relief filed pursuant to Rule 32, Ala. R.Crim. P.
In October 1998, Stallworth was convicted of two counts of capital murder for murdering Nancy Dukes and Linda Morton during the course of a robbery. The jury, by a vote of 10 to 2, recommended that Stallworth be sentenced to death. The circuit court followed the jury’s recommendation and sentenced Stallworth to death. After remanding the case for the trial court to correct its sentencing order, this Court affirmed Stallworth’s convictions and sentences of death. See Stallworth v. State, 868 So.2d 1128 (Ala.Crim. App.2001), cert. denied, 868 So.2d 1189 (Ala.2003). The United States Supreme Court denied certiorari review. See Stallworth v. Alabama, 540 U.S. 1057, 124 S.Ct. 828, 157 L.Ed.2d 711 (2003). This Court issued a certificate of judgment making Stallworth’s direct appeal final on June 27, 2003. See Rule 41(a), Ala. R.App. P.
In June 2004, Stallworth filed a postcon-viction petition attacking his convictions and death sentence. He filed amended petitions in October 2005 and in June 2006.[1] The State filed its answer to the postconviction petition, and Stallworth filed a brief .in response to that answer. In May 2007, the circuit court issued an order dismissing the majority of Stall-worth’s claims after it found that the *61 claims were insufficiently pleaded or failed to state claims upon which relief could be granted. In June 2009, the circuit court held an evidentiary hearing on the three claims that were not summarily dismissed. On May 12, 2010, the circuit court issued an order denying relief on those claims. Stallworth filed a timely notice of appeal to this Court.
This Court, in its opinion on direct appeal, set out the following facts surrounding Stallworth’s convictions:
“On December 4, 1997, John Gregory entered the Dukes Parkway Shell gasoline service station in Foley and discovered Nancy Dukes behind the counter on her knees with her arms and face in a chair. She had been stabbed numerous times, but she was still breathing. Gregory called for help, but Dukes died before the paramedics arrived. The coroner testified that Dukes had been stabbed approximately 40 times and that she died as a result of those injuries. There was testimony that between $400 and $600 was missing from the cash register.
“On December 14, 1997, Van Gardener discovered Linda Morton’s body lying face down on the floor behind the counter at the Diamond Gas Station and Convenience Store in Foley. The coroner testified that Morton had been stabbed six times and that she died as a result of those injuries. An audit of the cash register revealed that it was $934.00 short.
“While investigating Morton’s murder, police used a bloodhound at the Diamond store. The bloodhound went to a trail behind the store that went through a small wooded area and led to the Aaronville community. On the trail, police discovered a broken VCR, identified as the VCR from the Diamond store, and a bag of receipts that contained checks and credit card receipts. An eyewitness, Olivia Woodyard, testified that around the time of Morton’s murder she saw Stallworth leaving the trail behind the Diamond store. Woodyard testified that Stallworth was acting strangely and was nervous. She also testified that Stallworth had told her a few days before the robbery/murder that he was under a lot of stress because Christmas was near and he had no job. Another eyewitness testified that he saw a male wearing a dark, hooded jacket run from the Diamond store around the time of Morton’s murder.
“Numerous witnesses testified that Stallworth was spending a lot of money between December 4 and December 16, although he was not employed. Christina Lorraine Waters, a former employee of Riviera Utilities, testified that on December 4, 1997, just hours after Dukes was robbed and killed, Stallworth paid a delinquent electric power bill for his fiancée in the amount of $167.12. (Stallworth’s fiancée, Deborah Pickens, told him that the electric power had been cut off on the morning of December 4.) Waters also testified that when she was taking Stallworth’s payment, another employee was on the telephone and you could overhear her talking about Nancy Dukes’s murder. Waters said that when Stallworth heard the statement about Dukes’s murder he reacted by saying ‘Oh, man’ and hanging his head. (R. 268.) Glenn Manning, the owner of Manning Jewelry in Foley, testified that on December 4, 1997, Stall-worth paid him $100 for jewelry repairs that he had completed. Stallworth was also reported to have made several cash purchases at a Wal-Mart discount store.
“On December 16, 1997, the investigation focused on Stallworth, and police discovered that Stallworth was wanted *62 for a probation violation. Police picked Stallworth up for the probation violation, questioned him about the two murders, and obtained a search warrant to search his fiancée’s home, where he was living. Police seized a hooded jacket that had blood on the inside of one of the sleeves. DNA testing revealed that the blood on the jacket matched Dukes’s DNA. The search of Stallworth’s fiancée’s house also revealed a serrated kitchen knife under the mattress. Experts testified that the knife was the same type of knife used to kill both Dukes and Morton.
“Stallworth gave several statements to police — each of which varied in some detail. Stallworth admitted that he was at the scene of both robbery/murders, but he denied killing either Dukes or Morton. Stallworth also admitted that he had removed the VCR from the Diamond store because, he said, he knew the videotape would show him in the store. Stallworth said that he took the VCR to a trail behind the Diamond store and he used a hammer to open it and destroy the tape. Stallworth also told police that he found a bag of money on the trail and that he took the money and left.
“Stallworth testified in his own defense at trial. He said that he had not been at either scene and that his statements to police were coerced. He said that he had an alibi for the time of both murders. (Defense witnesses also testified that he had an alibi.) Stallworth also testified that he paid his bills in December 1997 with his ‘cousin’s help, shooting dice, and selling a little marijuana.’ (R. 3950.) He said that police coerced him to confess that he had been present at the Dukes station and the Diamond store after police threatened his daughter, his wife, his mother, and his brother. He further testified that Woodyard lied about seeing him near the Morton murder scene because, he said, he ‘wouldn’t give her no drugs, no free drugs.’ (R. 3989.) He also said that somebody in the police department planted Dukes’s blood on his jacket. (R. 4006.)”
868 So.2d at 1136-38 (footnotes omitted).

Standard of Review

Stallworth appeals the circuit court’s partial denial and partial summary dismissal of his petition for postconviction relief attacking his capital-murder conviction and sentence of death. According to Rule 32.3, Ala. R.Crim. P., Stallworth has the sole burden of pleading and proving that he is entitled to relief. Rule 32.3, Ala. R.Crim. P., provides:
“The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief. The 'state shall have the burden of pleading any ground of preclusion, but once a ground of preclusion has been pleaded, the petitioner shall have the burden of disproving its existence by a preponderance of the evidence.”
When it reviewed Stallworth’s claims on direct appeal, this Court applied a plain-error standard of review and examined every issue regardless of whether the issue was preserved for appellate review. See Rule 45A, Ala. R.App. P. However, the plain-error standard does not apply when evaluating a ruling on a postconviction petition, even when the petitioner has been sentenced to death. See Ferguson v. State, 13 So.3d 418, 424 (Ala.Crim.App.2008); Waldrop v. State, 987 So.2d 1186 (Ala.Crim.App.2007); Hall v. State, 979 So.2d 125 (Ala.Crim.App.2007); Gaddy v. State, 952 So.2d 1149 (Ala.Crim.App.2006). “The standard of review this Court uses in evaluating the rulings made by the trial *63 court is whether the trial court abused its discretion.” Hunt v. State, 940 So.2d 1041, 1049 (Ala.Crim.App.2005) (citing Elliott v. State, 601 So.2d 1118, 1119 (Ala.Crim.App.1992)). However, “[t]he sufficiency of pleadings in a Rule 32 petition is a question of law. ‘The standard of review for pure questions of law in criminal cases is de novo. Ex parte Key, 890 So.2d 1056, 1059 (Ala.2003).’ ” Ex parte Beckworth, [Ms. 1091780, July 3, 2013] — So.3d -, - (Ala.2013) (quoting Ex parte Lamb, 113 So.3d 686, 689 (Ala.2011)).
The majority of the claims raised by Stallworth in his brief to this Court were summarily dismissed before the evidentia-ry hearing after the State filed its answer to Stallworth’s postconviction petition And after Stallworth filed a detailed response to that answer. Many of the claims that were summarily dismissed were claims that Stallworth was denied his right to the effective assistance of counsel.
In discussing the pleading requirements related to postconviction petitions, this Court has stated:
“Although postconviction proceedings are civil in nature, they are governed by the Alabama Rules of Criminal Procedure. See Rule 32.4, Ala. R.Crim. P. The ‘notice pleading’ requirements relative to civil cases do not apply to Rule 32 proceedings. ‘Unlike the general requirements related to civil cases, the pleading requirements for postconviction petitions are more stringent....’ Daniel v. State, 86 So.3d 405, 410-11 (Ala. Crim.App.2011). Rule 32.6(b), Ala. R.Crim. P., requires that full facts be pleaded in the petition if the petition is to survive summary dismissal. See Daniel, supra. Thus, to satisfy the requirements for pleading as they relate to postconviction petitions, Washington was required to plead full facts to support each individual claim.”
Washington v. State, 95 So.3d 26, 59 (Ala. Crim.App.2012).
“The burden of pleading under Rule 32.3[, Ala. R.Crim. P.,] and Rule 32.6(b)[, Ala. R.Crim. P.,] is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See Bracknell v. State, 883 So.2d 724 (Ala.Crim.App.2003).”
Hyde v. State, 950 So.2d 344, 356 (Ala. Crim.App.2006).
When pleading claims of ineffective assistance of counsel, this Court has stated:
“To sufficiently plead an allegation of ineffective assistance of counsel, a Rule • 32 petitioner not only must ‘identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,’ Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. A bare allegation that prejudice occurred without specific facts indicating how the petitioner-was prejudiced is not sufficient.”
950 So.2d at 356.
“An evidentiary hearing on a coram no-bis petition [now Rule 32 petition] is *64 required only if the petition is ‘meritorious on its face.’ Ex parte Boatwright, 471 So.2d 1257 (Ala.1985). A petition is ‘meritorious on its face’ only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true. Ex parte Boatwright, supra.; Ex parte Clisby, 501 So.2d 483 (Ala.1986).”
Moore v. State, 502 So.2d 819, 820 (Ala. 1986).
Moreover, an evidentiary hearing is not necessary in every case in which the petitioner alleges claims of ineffective assistance of counsel. The Alabama Supreme Court has stated:
“While it is true that our cases hold that a judge must conduct a hearing on a post-conviction petition that is meritorious on its face, a judge who presided over the trial or other proceeding and observed the conduct of the attorneys at the trial or other proceeding need not hold a hearing on the effectiveness of those attorneys based upon conduct that he observed.”
Ex parte Hill, 591 So.2d 462, 463 (Ala. 1991). “[A] circuit judge who has personal knowledge of the facts underlying an allegation of ineffective assistance of counsel may summarily deny that allegation based on the judge’s personal knowledge of counsel’s performance.” Partain v. State, 47 So.3d 282, 286 (Ala.Crim.App.2008) (citing Ex parte Walker, 800 So.2d 135 (Ala. 2000)). Here, the circuit judge who presided over Stallworth’s postconviction proceedings was the same judge who presided over Stallworth’s capital-murder trial and the same judge who sentenced Stallworth to death.[2]
Last, “[t]his Court may affirm the judgment of the circuit court for any reason, even if not for the reason stated by the circuit court.” Acra v. State, 105 So.3d 460, 464 (Ala.Crim.App.2012).
With these principles in mind, this Court reviews the claims raised by Stallworth in his brief to this Court.
I.
Stallworth first argues that the circuit court erred in denying him relief on the three claims that were the subject of the postconviction evidentiary hearing: (1) that counsel was ineffective for failing to have the blood smear on' the inside of Stallworth’s jacket tested for the presence of EDTA;[3] (2) that counsel was ineffective for failing to employ and present the testimony of a DNA expert; and (3) that counsel was ineffective for failing to secure and present the testimony of a blood-spatter expert.
The circuit court’s entire findings after the hearing consisted of the following:
“[Stallworth] asserts a claim of ineffective assistance of trial counsel regarding the preservation and testing of blood evidence. [Stallworth] relies on this be *65 lief that a tandem mass spectrometry-test for EDTA levels would be admissible scientific evidence. There is no proof offered by [Stallworth] regarding the admissibility of such a test and there is no offer of proof that testing EDTA levels through the use of Tandem Mass Spectrometry has gained general acceptance in the scientific community. [Stallworth] has failed to show any prejudice suffered for the claim of ineffective assistance of counsel. Therefore, [Stall-worth] is not entitled to relief.”
(C.R. 774.)
Rule 32.9, Ala. R.Crim. P., provides, in pertinent part:
“(a) Hearing. Unless the court dismisses the petition, the petitioner shall be entitled to an evidentiary hearing to determine disputed issues of material fact....
[[Image here]]
“(d) Findings of Fact. The court shall make specific findings of fact relating to each material issue of fact presented.”
In interpreting the scope of this Rule, the Alabama Supreme Court has stated:
“ ‘Rule 32.9(d), Ala. R.Crim. P., requires that if an evidentiary hearing is conducted on the Rule 32 petition, “[t]he court shall make specific findings of fact relating to each material issue of fact presented.” ’ Anglin v. State, 719 So.2d 855, 857 (Ala.Crim.App.1996) (opinion on return to remand) (emphasis and alteration in Anglin). ‘In addition [to the specific findings of fact], the basis of the trial court’s ruling, whether procedural or on the merits, must be clear.’ Jones v. State, 709 So.2d 498, 498 (Ala.Crim.App.1996) (citing Henderson v. State, 570 So.2d 879 (Ala.Crim.App.1990)). ‘A statement of the basis of the trial court’s decision is essential to afford the appellant due process.’ Owens v. State, 666 So.2d 31, 32 (Ala.Crim.App.1994).”
Ex parte Grau, 791 So.2d 345, 347 (Ala. 2000).
Again in Ex parte McCall, 30 So.3d 400, 404 (Ala.2008), the Alabama Supreme Court cited the mandatory nature of Rule 32.9(d), Ala. R.Crim. P., and said: “[0]nce a hearing has been held Rule 32.9(d)[, Ala. R.Crim. P.,] requires findings of fact in support of the judgment. Under our decision in Ex parte Grau, [791 So.2d 345 (Ala.2000),] the trial court’s failure to issue such findings is grounds for reversal.” On numerous occasions, this Court has remanded cases on postconviction appeal to the circuit court for that court to make specific findings of fact pursuant to the Supreme Court’s decision in Ex parte Grau after an evidentiary hearing was held on a postconviction petition. See Smith v. State, 160 So.3d 40 (Ala.Crim.App.2010); Andrews v. State, 38 So.3d 99 (Ala.Crim.App.2009); Johnson v. State, 988 So.2d 1069 (Ala.Crim.App.2007); Getz v. State, 984 So.2d 1221 (Ala.Crim.App. 2006); Wiggins v. State, 987 So.2d 1153 (Ala.Crim.App.2006); Tarver v. State, 940 So.2d 312 (Ala.Crim.App.2004); Sims v. State, 869 So.2d 1181 (Ala.Crim.App.2003); Holloway v. State, 848 So.2d 1017 (Ala.Crim.App.2002); Adkins v. State, 930 So.2d 524 (Ala.Crim.App.2001).
Therefore, in compliance with the above-cited cases, this cause is hereby remanded to the circuit court for that court to make specific findings of fact concerning all three claims of ineffective assistance of counsel that were the subject of the post-conviction evidentiary hearing.
In the interest of judicial economy, this Court will address the validity of the circuit court’s summary dismissal of claims raised in Stallworth’s second amended postconviction petition.
II.
Stallworth argues that the circuit court erred in summarily dismissing his claims *66 concerning the prosecutor’s arguments and his counsel’s failure to object to those arguments.
As stated above, “[t]he sufficiency of pleadings in a Rule 32 petition is a question of law. ‘The standard of review for pure questions of law in criminal cases is de novo. Ex parte Key, 890 So.2d 1056, 1059 (Ala.2003).’ ” Ex parte Beckworth, — So.3d at -(quoting Ex parte Lamb, 113 So.3d at 689). “Legal conclusions are never accorded a presumption of correctness on appellate review.” Ex parte Cain, 838 So.2d 1020, 1026 (Ala.2002) (citing Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994)). “When applying the de novo standard of review, this Court is not obligated to rely on the same analysis as that employed by the trial court.” State v. C.M., 746 So.2d 410, 414 (Ala.Crim.App.1999) (citing Ex parte Graham, 702 So.2d 1215, 1221 (Ala. 1997)).
A.
First, Stallworth asserts that the circuit court erred in summarily dismissing his claim that the prosecutor’s guilt-phase closing arguments denied him a fair trial. The circuit court found that this claim was procedurally barred by Rules 32.2(a)(3) and (a)(5), Ala.R.Crim. P., because it could have been raised at trial or on direct appeal but was not. This Court has consistently and frequently held that such claims are procedurally barred in a postconviction proceeding because the claim could have been raised at trial or on direct appeal. See Ingram v. State, 959 So.2d 1151 (Ala.Crim.App.2006); Boyd v. State, 746 So.2d 364 (Ala.Crim.App.1999); Fortenberry v. State, 659 So.2d 194 (Ala.Crim.App.1994); Cade v. State, 629 So.2d 38 (Ala.Crim.App.1993). “It is well settled that ‘the procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed.’ ” Nicks v. State, 783 So.2d 895, 901 (Ala.Crim.App.1999) (quoting State v. Tarver, 629 So.2d 14, 19 (Ala.Crim.App.1993)).
Because this claim could have been, but was not, raised at trial or on appeal, the circuit court correctly held that the claim was procedurally barred. Rules 32.2(a)(3) and 32.2(a)(5), Ala. R.Crim. P. Therefore, the circuit court did not err by dismissing this claim.
B.
Stallworth next argues that the circuit court erred in summarily dismissing his claim that his trial counsel was ineffective for failing to object to improper prosecutorial arguments. Specifically, Stallworth pleaded that his counsel was ineffective for failing to challenge the following arguments made by the prosecutor during his guilt-phase closing arguments:
“I hope I don’t disappoint the family of Nancy Dukes. And I don’t disappoint the family of Linda Morton.”
(Trial R. 4610.)
“I am aggressive. And I have passion. And I believe there is a place for passion in this court of law. That this court of law is not designed for lawyers, it’s designed for people. And people have passion. Not just cold logic. Passion.”
(Trial R. 4642-43.)
“[T]he fact that you have a heart, you shouldn’t be ashamed of it. This case did something to this community. This is a crime against the people of Alabama, it’s a crime against the people of Baldwin County.”
(Trial R. 4643.) Stallworth also challenges the prosecutor’s comments that the murders shattered the Foley community. According to Stallworth, these arguments were designed to inflame the passion of the jury and to appeal to the jurors’ emo *67 tions. Therefore, he asserts, they were improper, and his counsel should have objected.
The State, in its answer, argued that these claims should be summarily dismissed because: “(1) Stallworth’s attorneys cannot be ineffective for failing to raise unsuccessful objections; and (2) there is no reasonable probability that any such objections would have affected the outcome of Stallworth’s case.” (G.R. 164.)
The circuit court summarily dismissed these claims citing Rule 32.7(d), Ala. R.Crim. P., which states, in pertinent part:
“(d) Summary disposition. If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition.”
As the State correctly noted in its answer, the circuit court instructed the jury that arguments of counsel were not evidence and that it was not to base its verdict on sympathy or emotion. The circuit court gave the following instruction: “You are not to consider as evidence the indictments that I read to you, the arguments of the attorneys, and any rulings by this court on matters of evidence.” (Trial R. 4668-69.) “It is well settled that jurors are presumed to follow, not disregard, the trial court’s instructions.” Brooks v. State, 973 So.2d 380, 409 (Ala.Crim.App.2007).
Moreover, to constitute reversible error, a prosecutor’s arguments must have “so infected the trial with unfairness as to make the resulting [verdict] a denial of due process.” Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). That high standard was not met in this case. The majority of the comments to which Stallworth argues counsel should have objected appear to be appeals for justice. “There is no impropriety in a prosecutor’s appeal to the jury for justice and to properly perform its duty.” Price v. State, 725 So.2d 1003, 1033 (Ala. Crim.App.1997). “Because the substantive claim underlying the claim of ineffective assistance of counsel has no merit, counsel could not be ineffective for failing to raise this issue.” Lee v. State, 44 So.3d 1145, 1173 (Ala.Crim.App.2009). This claim was due to be summarily dismissed pursuant to Rule 32.7(d), Ala. R.Crim. P.
Moreover, even if counsel should have objected to the prosecutor’s arguments, the absence of objections did not affect the outcome of the trial. This Court has reviewed the trial record and the prosecutor’s arguments. Here, the prosecutor’s comments were not particularly egregious. Further, the circuit court instructed the jurors not to consider the attorneys’ arguments in their deliberations and not to allow passion or prejudice to influence their decision. Accordingly, the prosecutor’s arguments did not “so infect[] the trial with unfairness as to make the resulting [verdict] a denial of due process,” Darden, 477 U.S. at 181, and there is no reasonable probability that the outcome of the trial would have been different. Washington v. State, 95 .So.3d 26, 59 (Ala. Crim.App.2012). Consequently, the circuit court correctly dismissed these claims for failure to state a claim or for failure to raise a, material issue of fact or law that would entitle Stallworth to relief. Rule 32.7(d), Ala. R.Crim. P.
III.
Stallworth next argues that the circuit court erred in summarily dismissing his claims that his trial attorneys were *68 ineffective for failing to call certain witnesses.
“This Court has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. Bray v. Quarterman, 265 Fed. Appx. 296, 298 (5th Cir.2008). Thus, to prevail on an ineffective assistance claim based on counsel’s failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness’s proposed testimony, and show that the testimony would have been favorable to a particular defense.”
Day v. Quarterman, 566 F.3d 527, 538 (5th Cir.2009); see also Glass v. State, 227 S.W.3d 463, 468 (Mo.2007).
“[W]hat must be alleged in order to make out a prima facie claim for relief— i.e., to avoid summary dismissal under Rule 32.7(d)[, Ala. R.Crim. P.,] for failure to sufficiently ‘state a claim’ — depends upon the specific provision of Rule 32 upon which a claim for relief is based and on what ultimately must be proved in order to prevail on that provision.”
Ex parte Beckworth, — So.3d at-.
For Stallworth to meet his burden of pleading his claims that his counsel was ineffective for failing to present the testimony of a certain witness, he must plead, among other things, facts establishing the following: (1) the identity of the witness; (2) the content of the witness’s expected testimony; (3) that the testimony was favorable to the defendant; (4) that the witness was available to testify at Stallworth’s trial and would have testified; and (5) that a reasonable investigation would have led counsel to the witness.
A.
Stallworth first asserts that his counsel was ineffective for failing to call Dollie Williams as a witness in his defense. In his second amended petition, Stallworth pleaded that counsel failed to interview and to call Williams. At the time of Morton’s murder, Williams was working as an employee at a restaurant located across the street from the Diamond store. Attached to Stallworth’s postconviction petition is an affidavit executed by Williams. In the affidavit Williams states that around 12:00 p.m. on December 14, 1997, she saw a man running from the Diamond store, that the man was wearing dark colored clothes, that he was of a heavy build, and that the person was not Stallworth, whom she knew.
In its answer to Stallworth’s petition, the State asserted:
“Stallworth fails to plead any facts showing that his trial attorneys knew of Ms. Williams and her statement. In fact, Ms. Williams claims she never talked to anyone about her statement before trial. Thus, even if Ms. Williams’s statements were taken as true, this claim is insufficiently pleaded because it fails to plead necessary facts under Strickland’s [v. Washington, 466 U.S. 668 (1984),] performance element that Stallworth’s attorneys knew (or even should have known) about Ms. Williams’s statement.”
(C.R. 141-42.) There was testimony at Stallworth’s trial indicating that Morton’s murder occurred at approximately 1:00 p.m. on December 14,1997.
A review of the record of Stallworth’s trial shows that counsel presented a vigorous and extensive defense.[4] Counsel *69 called 21 defense witnesses and Stallworth to testify. Several witnesses testified that other individuals were seen at or near the Diamond store at the time of Morton’s murder. Debra Jones testified that, during the time of Morton’s murder, she had worked at the Diamond store and that, several months after the murder, a customer named Greg Rolling had threatened her when he said, “She was next.” Jocelyn Riebe testified that she had worked at the Diamond store and that she went to the store the day that Morton was murdered and waited until Morton’s body had been removed. She said that a cowbell had been hanging from one of the entrance doors but the bell was lying on the ground.[5] Riebe mentioned the bell, she said, to one of the investigators. At the time of Morton’s murder, an individual named Elbie Bolder swept the floors at the Diamond store, and Morton did not like to be alone with Bolder because, she said, he made her nervous and could be obnoxious. Virginia Chute testified that she worked at the Diamond store when Morton was killed, that she went to the store after she had heard that Morton had been killed, that the bell that had been hanging on one of the entrance doors that morning was no longer there but was lying on the ground outside the store, that she told police about the bell, and that, when she came back to work after Morton’s funeral, the bell was still lying on the ground outside the store. Chute testified that she worked the night shift before Morton came to work on December 14, 1997, and that a man she knew’ as Greg sat outside the store in his truck for about three hours that night and it scared her. Teresa Roberts testified that around 12:00 p.m. on the day Morton was murdered, she was at the Auto Zone, a store right across the street from the Diamond store, and she saw two black men walk from the Diamond store and cross the street. According to Roberts, one hour later, around 1:00 p.m., she saw the same two men in the parking lot of the Diamond store. Margaret Stead testified that on December 14, 1997, she was at the Diamond store getting gas, that her receipt was timed 12:42 p.m., and that two big, black men were in a car next to the pump she was using. Richard Gonzalez testified that on December 14, 1997, he was on County Road 59, near the location of the Diamond store, going north between 12:30 and 1:00 p.m. and a car turned off Highway 20 and was moving at a great rate of speed, around 100 mph. The two men in the vehicle were white, and their heads were shaved.
Stallworth also presented testimony that he had an alibi at the time of Morton’s murder. Shirley Dailey testified that she had known Stallworth his entire life, that on the day Morton was murdered Stall-worth came to her house that morning, that her mother called to tell her that a clerk at the Diamond store had been killed, that she and several others who were at her house went to the store, that Stallworth stayed at her house with the kids, that on her way to the store she saw Greg Rolling, that Rolling had been stopped by two police officers near the Diamond store, and that Stallworth did not act unusual that day. Debra Williams, Shirley. Dailey’s daughter, testified that Stallworth was at Shirley Dailey’s house when they heard the sirens at the Diamond store on December 14,1997. Walter Reed, Stallworth’s stepfather, testified that at around 2:00 p.m. on December 14, 1997, Stallworth was at his house, that Stallworth spent most of the rest of the *70 day at his house, and that Stallworth did not act strangely that day.
Stallworth’s attorneys also recalled Lieutenant Huey Mack, Jr., to the stand. Lt. Mack testified that there was a drainage pond behind the Diamond store and that several times after Morton’s murder he went to that pond to look for evidence. In April 1998, after the pond had dried up, Mack recovered a knife. The State had argued that a knife found in Stallworth’s fiancée’s home was the murder weapon.
Here, Stallworth was represented in the circuit court by three attorneys. Given the number of witnesses that counsel presented and the fact that Dollie Williams was expected to testify that she saw a man coming out of the Diamond store an hour before the murder, Stallworth failed to state a claim upon which relief could be granted. Rule 32.7(d), Ala. R.Crim. P. “[T]he notion that the result could have been different if only [the attorneys] had put on more than the [21] witnesses [they] did, or called expert witnesses to bolster his case, is fanciful.” Wong v. Belmontes, 558 U.S. 15, 28, 130 S.Ct. 383, 175 L.Ed.2d 328 (2009). Thus, this claim was due to be summarily dismissed. Rule 32.7(d), Ala. R.Crim. P.
B.
Stallworth next argues that counsel was ineffective for failing to present the testimony of Catherine Corazzini. In his second amended petition, Stallworth pleaded the following concerning Corazzi-ni:
“Stallworth’s attorneys also failed to interview and call [Catherine] Corazzini as a witness. Had defense counsel interviewed Corazzini, they would have learned that Corazzini was working at Church’s Fried Chicken, located across the street from Diamond on December 14, 1997. She observed a black male exiting Diamond around the time of Morton’s murder. Consistent with Williams’s testimony, Corazzini described the man she saw exiting Diamond to be of medium build (as opposed to Stallworth’s thin build) wearing dark clothes, possibly a sweatshirt and sweat pants. The description of the man Co-razzini saw exiting Diamond did not match Stallworth’s description. Corazzi-ni’s testimony would have conflicted with that provided by the State’s own ID witness, [Olivia] Woodyard. This conflicting testimony surely would have created reasonable doubt in the jury’s thinking as to Stallworth’s presence at the scene of the crime sufficient for the jury to acquit Stallworth. Thus failure to investigate, discover, and offer this witness resulted in prejudice and demonstrates ineffective assistance of counsel.”
(C.R. 44-45.)
The State in its answer asserted the following:
“Under Strickland’s [v. Washington, 466 U.S. 668 (1984),] performance element, Stallworth fails to plead sufficient facts to show that his attorneys knew of Ms. Corazinni’s [sic] statement. Again, a trial attorney cannot perform defi-ciently in failing to call a witness ‘if [petitioner’s] counsel did not know about these witnesses.’ Johnson [v. State, 823 So.2d 1,] 49 [ (Ala.Crim.App.2001) ]. Here, Stallworth pleads no facts that his attorneys knew of Ms. Corazinni’s statement. In fact, Stallworth claims in paragraphs 19 and 11-15 of his petition that his attorneys ‘could not’ have presented Ms. Corazinni’s testimony at trial because the State ‘suppressed’ the existence of her statement. Furthermore, Ms. Corazinni claims in her affidavit to have moved to Virginia (where she still lives) in May 1998 — five months before *71 Stallworth’s trial — to get away from Alabama and forget about the murder. It cannot be unreasonable to fail to find, then call as a witness, someone who purposefully left the State to avoid any mention of the trial.
“Stallworth cannot have it both ways. He fails to plead any facts that would prove his attorneys knew of Ms. Cora-zinni’s statement, and he claims that she purposefully left the State before the trial and the State hid her existence from him. Thus, there can be no question Stallworth insufficiently pleads facts that would prove his attorneys knew of Ms. Corazinni but unreasonably failed to call her to testify.
“Regardless, this claim also fails to prove prejudice under Strickland, even if all of the pleaded facts are considered true. Stallworth claims prejudice because ‘Corazinni’s testimony would have conflicted with that provided by the State’s only ID witness, Woodyard.’ According to Ms. Corazinni’s affidavit, Ms. Corazinni witnessed a black male leaving the Diamond store ‘around 12:00 p.m.’ and that her mother picked her up from work about 40 minutes later. Yet, Ms. Morton was still alive, and checking out customers, at 12:49 p.m. In fact, the phone call to 9-1-1 concerning Ms. Morton’s death was not placed until 1:11 p.m.
“Accordingly, whoever Ms. Corazinni saw at 12:00 p.m. was almost definitely not the murderer, as Ms. Morton lived— and served living customers — at least another 50 minutes. Stallworth was seen walking out of the woods behind the Diamond Station around 12:45 to 1:00 p.m., placing him at the scene of the murder at the time of the murder — not 50 minutes early like Ms. Corazinni’s ‘suspect.’ Thus, Ms. Corazinni’s testimony as pleaded in her affidavit would not have affected the outcome of the case because it was irrelevant to the time period involved in this case.”
(C.R. 142-43.) The circuit court summarily dismissed this claim citing Rules 32.6(b) and 32.7(d), Ala. R.Crim. P.
Attached to Stallworth’s petition was an affidavit executed by Corazzini. Corazzini stated that she and her family left Alabama and moved to Virginia in May 1998. Corazzini also stated that she was then a resident of Virginia. Stallworth failed to plead that Corazzini was available to testify in Alabama in October 1998 and that she would have testified. Thus, Stallworth failed to plead the full facts in support of this claim and it was due to be summarily dismissed pursuant to Rule 32.6(b), Ala. R.Crim. P.
Moreover, counsel is not ineffective for failing to call a witness who is unavailable. As the Supreme Court of Florida has stated:
“With regard to an ineffective assistance of counsel claim, witness availability is integral to a movant’s allegations of prejudice. See Nelson v. State, 875 So.2d 579, 583 (Fla.2004). When a witness is unavailable to testify, trial counsel is not automatically ineffective for his or her failure to present that witness. See White v. State, 964 So.2d 1278, 1286 (Fla.2007). In such instances, due to the unavailability of the witness, a defendant cannot establish deficient performance or prejudice. See Nelson, 875 So.2d at 583. There are many reasons for a witness’s unavailability, ranging from the assertion by the witness of his or her right to remain silent, or the inability to locate witnesses or serve them with a subpoena. See id. n. 3. Furthermore, even if a witness was available to testify and counsel was deficient in not presenting his or her testimony during trial, counsel is not ineffective if that testimo *72 ny would have been cumulative to other evidence presented, because such cumulative evidence removes a defendant’s ability to establish prejudice. See Darling v. State, 966 So.2d 366, 377 (Fla. 2007). In a defendant’s postconviction motion, if he or she alleges that counsel was deficient for the failure to call a witness, he or she must establish that the witness was available to testify. See Nelson, 875 So.2d at 583.”
Nelson v. State, 73 So.3d 77, 88-89 (Fla. 2011) (footnote omitted). “A defendant cannot establish ineffective assistance of counsel based on counsel’s failure to call a witness who is unavailable.” White v. State, 964 So.2d 1278, 1286 (Fla.2007) (citing Melton v. State, 949 So.2d 994, 1004 (Fla.2006)). “Counsel cannot be held ineffective for failing to track down a witness whose whereabouts are unknown.” Harris v. Upton, 292 Ga. 491, 495, 739 S.E.2d 300, 305 (2013) (citing Moore v. State, 278 Ga. 397, 603 S.E.2d 228 (2004)). “Counsel cannot be said to be ineffective for failing to call an unavailable witness.” Williamson v. Moore, 221 F.3d 1177, 1181 (11th Cir.2000).
Furthermore, Stallworth failed to plead prejudice in couhsel’s failure to present Corazzini’s testimony. Certainly, there is no prejudice in counsel’s failure to produce a witness who would have testified that she saw a black male leave the Diamond store, a public business, at 12:00 p.m. on December 14, 1997, when Morton’s murder occurred at approximately 1:00 p.m. that same day and witnesses testified that Morton was alive after 12:00 p.m.
Based on the testimony that counsel presented at Stallworth’s trial as detailed in Section III.A. of this opinion, this claim was due to be summarily dismissed.
C.
Stallworth next argues that his trial counsel was ineffective for failing to present the testimony of Diane Caudill. In his second amended petition, Stallworth pleaded that Caudill had “told the police that she had seen Sherman Packer running from the Diamond [store] on the day of Morton’s murder. Defense counsel failed to call her to testify at trial.” (C.R. 45.)
The State asserted in its answer that Stallworth failed to plead sufficient facts to entitle him to relief; i.e., he failed to plead the time that Packer was seen running from the Diamond store. The State asserted the following in its answer:
“While Stallworth claims Ms. Caudill saw Sherman Packer running from the Diamond store on the day of the murder, he fails to plead when Packer was near the murder scene in his petition. That is likely because Ms. Caudill allegedly saw Packer running from the scene at 11:15 a.m. — over one and a half hours before the murder occurred. That Packer left the Diamond store an hour and a half before Ms. Morton was killed fails to prove he committed the murder — especially when Stallworth was seen fleeing from the scene just after the murder and he admitted to being there. Thus, Stallworth fails to plead facts that would prove a reasonable probability that the outcome of the jury’s verdict would have changed.”
(C.R. 145.) The circuit court dismissed this claim pursuant to Rules 32.6(b) and 32.7(d), Ala. R.Crim. P.
An affidavit executed by Caudill was attached to Stallworth’s posteonviction petition. Caudill states that she saw Packer at the Diamond store at around 11:15 a.m. on the morning of December 14, 1997. Stallworth did not plead in his postconviction petition the time Caudill saw Packer.
*73 Clearly, this claim was properly summarily dismissed pursuant to Rules 32.6(b) and 32.7(d), Ala. R.Crim. P., because Stall-worth failed to plead the full facts entitling him to relief when he failed to plead the time Caudill saw Parker run from the Diamond store. Also, Stallworth failed to plead facts that would establish prejudice given the time that Caudill says she saw Packer at the Diamond store.
Furthermore, Stallworth’s trial counsel did call Caudill to testify at a pretrial hearing on Stallworth’s motion to suppress his statements to police. Caudill testified that on December 14, 1997, she saw Stallworth twice. Earlier in the day, she said, he was wearing dark clothes but later that day he asked her and a friend to take him to a Walmart discount store where he bought a jersey. Stallworth’s attorneys questioned Caudill using a statement she had given to police. Caudill denied most of comments that were contained in her statement to the police. It is clear from reviewing the record of Stall-worth’s trial that Stallworth’s attorneys were aware of Caudill, that they called her as a witness at a pretrial hearing, and that counsel did not overlook Caudill, but instead chose not to call her in Stallworth’s defense. “Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy.” People v. Rockey, 237 Mich.App. 74, 76, 601 N.W.2d 887, 890 (1999) (citing People v. Mitchell, 454 Mich. 145, 163, 560 N.W.2d 600 (1997)). “[A] trial counsel’s choice of whether to call witnesses is generally accorded a presumption of deliberate trial strategy and cannot be subject to second-guessing in a claim of ineffective assistance of counsel.” Saylor v. Commonwealth, 357 S.W.3d 567, 571 (Ky.Ct.App.2012). This claim was due to be summarily dismissed because it was insufficiently pleaded and because it failed to state a claim upon which relief could be granted.
D.
Stallworth next argues that his trial counsel was ineffective for failing to present the testimony of Lynn Brewton. Stallworth pleaded the following in regard to this claim:
“Defense counsel also failed to interview and call [Lynn] Brewton as a witness despite her easily discoverable statements contained in the police report. Brewton, according to police reports, observed a black male run out of Diamond at the time of Morton’s murder. Brewton initially described the suspect as being close to 5'9" tall and wearing a black or navy toboggan with a blue shirt and a green hunting jacket. Brewton did not pick Stallworth out of a line-up presented to her by police. Had defense counsel interviewed and presented Brewton as a witness at trial, they would have been able to contradict the State’s evidence and identification of Stallworth as the offender in Morton’s murder where there was no physical evidence linking him to the crime.”
(C.R. 45-46.)
The State asserted the following in its answer:
“Stallworth claims his trial attorneys provided [ineffective assistance of counsel] by failing to call Lynn Brewton to testify at trial. This claim is insufficiently pleaded under [the] Strickland [v. Washington, 466 U.S. 668 (1984),] performance element. Stallworth does not allege or plead facts to show that his attorneys knew of Ms. Brewton’s statement. ‘Clearly, if [Stallworth’s] counsel did not know about th[is] witness[ ], they could not be ineffective for failing to call [her].’ Johnson [v. State ], 823 So.2d [1,] 49 (Ala.Crim.App.2001) (rejecting *74 petitioner’s claim that his trial attorneys provided [ineffective assistance of counsel] by failing to call three witness with ‘allegedly exculpatory evidence’). Accordingly, Stallworth failed to plead sufficient facts to show his attorneys acted unreasonably. See Ala. R.Crim. P. .32.6(b).
“Furthermore, Stallworth fails to plead sufficient facts to prove prejudice. Stallworth merely pleads facts that Ms. Brewton described the man she saw as 5'9" tall and could not positively pick Stallworth out of a line-up as the suspect. He does not plead facts that Ms. Brewton could identify someone else as the murderer or that she is absolutely positive that Stallworth was not the person she saw. Thus, Stallworth fails to plead sufficient facts that would have affected the outcome of his case. See Ala. R.Crim. P. 32.6(b), 32.7(d). This is especially true when Thomas Harris, another eyewitness who testified at trial, testified that he saw someone at the same time who was approximately 5'8" tall and did not pick Stallworth out of a lineup; yet, Stallworth was still convicted.”
(C.R. 145-46.) The circuit court summarily dismissed this claim citing Rules 32.6(b) and 32.7(d), Ala. R.Crim. P.
The record of Stallworth’s trial shows that Thomas Harris testified that on December 14, 1997, he was at the Pizza Hut restaurant across the street from the Diamond store and at around 12:45 p.m. he saw a black male wearing a dark hooded jacket come out of the woods behind the Diamond store and head to the store. He said that the male was about 5'8". On cross-examination he indicated that when shown a lineup he could not identify Stall-worth as the man he saw behind the Diamond store on December 14. Also, as detailed in Part III A of this opinion, defense counsel presented numerous witnesses who testified that they saw individuals at the Diamond store at the time of the murder.
Testimony was presented that was cumulative of Brewton’s testimony. “This Court has previously refused to allow the omission of cumulative testimony to amount to ineffective assistance of counsel.” United States v. Harris, 408 F.3d 186, 191 (5th Cir.2005) (citing Murray v. Maggio, 736 F.2d 279, 282 (5th Cir.1984)). “[T]he withholding of cumulative testimony will not ordinarily satisfy the prejudice component of a claim of ineffective assistance of counsel.” Taylor v. State, 352 N.W.2d 683, 687 (Iowa 1984) (citing Schrier v. State, 347 N.W.2d 657, 665 (Iowa 1984)).
This claim was due to be summarily dismissed because there was no material issue of fact or law that would entitle Stallworth to relief. Rule 32.7(d), Ala. R.Crim. P.
E.
Stallworth- also argues, for the first time in his brief to this Court, that his trial counsel was ineffective for failing to call witnesses Khanisha Moore-Wiggins and Carrie Clark to testify. As the State argues in its brief, these claims were not raised in Stallworth’s second amended postconviction petition and are not properly before this Court. “It is well settled that ‘[a]n appellant cannot raise an issue on appeal from the denial of a Rule 32 petition which was not raised in the Rule 32 petition.’ Arrington v. State, 716 So.2d 237, 239 (Ala.Crim.App.1997).” Mashburn v. State, 148 So.3d 1094, 1106 (Ala.Crim. App.2013). See also Ex parte Clemons, 55 So.3d 348, 351 (Ala.2007) (“We cannot, however, consider the issue whether the trial court erred in failing to consider Clemons’s borderline intellectual capacity *75 as a mitigating factor in the sentencing phase of his trial because the issue was not presented to the trial court in Clemons’s Rule 32 petition.”); Dunaway v. State, [Ms. CR-06-0996, Dec. 18, 2009] — So.3d -, - (Ala.Crim.App.2009) (“This issue was not raised in Dunaway’s consolidated amended Rule 32 petition. Therefore, it is not properly before this Court.”); Hooks v. State, 21 So.3d 772, 795 (Ala. Crim.App.2008) (“These claims were not raised in Hooks’s third amended postcon-viction petition. They are raised for the first time on appeal; thus, they are not properly before this Court.”).
Therefore, the claims related to witnesses Moore-Wiggins and Clark are not properly before this Court.
IV.
Stallworth next argues that the circuit court erred in refusing to hold a hearing on his claim that the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose exculpatory evidence to him. Specifically, Stallworth pleaded that the State failed to disclose statements that Catherine Corazzini had made to a captain with the Foley Police Department. Stallworth attached an affidavit executed by Corazzini to his postconviction petition. In the affidavit, Corazzini said that she told police that she saw a man run from the Diamond store on the day of Morton’s murder and that person did not fit Stallworth’s description.
Stallworth did not plead that this Brady claim was based on newly discovered evidence but instead pleaded that his constitutional rights had been violated by the State’s failure to disclose this evidence. A Brady claim may be raised in a postconviction petition as either a claim of newly discovered evidence under Rule 32.1(e), Ala. R.Crim. P., or a constitutional claim under Rule 32.1(a), Ala. R.Crim. P. See Washington v. State, 95 So.3d 26 (Ala.Crim.App.2012).
In its answer, the State asserted that this claim was procedurally barred pursuant to Rules 32.2(a)(3) and 32.2(a)(5), Ala. R.Crim. P., because Stallworth could have raised this issue in a motion for a new trial or on direct appeal. The State asserted:
“Here, Stallworth pleads no facts why his attorneys could not have reasonably discovered this Brady [v. Maryland, 373 U.S. 83 (1963),] claim. According to Stallworth’s petition, his new Rule 32 attorneys found out about this claim by talking to Catherine and Minnie Cora-zinni [sic]. Stallworth fails to plead any facts why his trial attorneys could not have likewise talked to the Corazinni’s and discovered this alleged Brady material. In fact, Stallworth claims his trial attorneys were ineffective for not talking to Ms. Corazinni before trial.... Thus, it is apparent Stallworth has failed to plead that ‘the [allegedly suppressed] information was not known, and could not reasonably have been discovered, at trial or in time to raise the issue in a motion for new trial or on appeal.’ [Ex parte ] Pierce, 851 So.2d [606] at 616 [ (Ala.2000) ].”
(C.R. 169.)
Recently, the Alabama Supreme Court in Ex parte Beckworth, [Ms. 1091780, July 3, 2013] — So.3d - (Ala.2013), reversed this Court’s decision affirming the summary dismissal of Beckworth’s post-conviction petition after finding that Rule 32.3, Ala. R.Crim. P., imposes no duty on a postconviction petitioner to plead any ground of preclusion. The Supreme Court stated:
“Rule 32.3[, Ala. R.Crim. P.,] provides that ‘[t]he state shall have the burden of pleading any ground of preclusion, but once a ground of preclusion has been *76 pleaded, the petitioner shall have the burden of disproving its existence by a preponderance of the evidence.’ (Emphasis added.) Thus, Rule 32.3 does not impose any burden of pleading on the petitioner regarding preclusion, only a burden of disproving preclusion if preclusion is pleaded by the State. As we stated in Ex parte Lucas, 865 So.2d 418, 420 (Ala.2002), ‘[t]he fact that a claim might be precluded under Rule 82.2(a)(3) or (5) would have no bearing on whether the statement of the claim was facially valid.’ (Emphasis added.) Accordingly, a dismissal of a Rule 32.1(a)[, Ala. R.Crim. P.,] petition on the ground that the petitioner has faded to affirmatively plead the absence of facts sufficient to sustain a defense of preclusion under Rule 32.3 is error.”
— So.3d at-.
The basis for the Supreme Court’s decision in Beckworth was that the circuit court summarily dismissed Beckworth’s postconviction petition only three days after the State filed its response raising the procedural default grounds in Rule 32, Ala. R.Crim. P., and before Beckworth had an opportunity to respond to the State’s assertion of those default grounds. Unlike the situation in Beckworth, in this case Stallworth was given an opportunity to respond to the State’s assertion of the procedural bars in Rule 32.2, Ala. R.Crim. P. In fact, in Stallworth’s response he specifically mentions the State’s assertions, but never answered why those procedural default grounds were not applicable in his case. Thus, the facts in Beckworth are distinguishable from the facts presented in this case.
The Alabama Supreme Court in Ex parte Pierce, 851 So.2d 606 (Ala.2000), stated:
“Pierce does not seek relief under Rule 32.1(e)[, Ala. R.Crim. P.]. Pierce does not contend that ‘[n]ewly discovered material facts exist which require that the conviction or sentence be vacated by the court.’ Rule 32.1(e). Instead, Pierce’s claim fits under Rule 32.1(a)[, Ala. R.Crim. P.]: ‘The constitution of the United States or of the State of Alabama requires a new trial.... ’ Rule 32.1(a) states a ground for relief distinct from that stated in Rule 32.1(e). If every defendant had to prove that the facts on which he relies for postconviction relief satisfy the elements of ‘newly discovered material facts’ set out by Rule 32.1(e), then constitutional violations could rarely be raised in a Rule 32 petition, and Rule 32.1(a) would be superfluous for all cases except those in which the defendant could prove innocence. There is a place for this Court to review constitutional violations that could not be discovered by the date of trial or in time to be raised in a direct appeal, even if the defendant is guilty of the crime charged. Furthermore, the application of the requirements of Rule 32.1(e) in cases like Pierce’s would impose a nearly impossible standard on a defendant filing a Rule 32 petition. A defendant could rarely, if ever, establish, through the same facts tending to prove that the jury was prejudiced or improperly influenced, that he is innocent of the crime charged. Yet, jury prejudice or improper influence is an important issue for this Court to review.
“Rule 32.1(a) is the same provision that allows a defendant to raise an ineffective-assistance-of-counsel claim in a postconviction proceeding. Yet, this Court has never required a defendant alleging ineffective assistance of counsel to meet the elements stated in Rule 32.1(e), particularly the Rule 32.1(e)(5) requirement of showing facts establishing that the defendant is innocent of the *77 crime. Almost never could a defendant meet the requirement of showing that his evidence proving ineffective assistance also proves his innocence.
“Although Rule 32.1(e) does not preclude Pierce’s claim, Rule 32.2(a)(3) and (5) would preclude Pierce’s claim if it could have been raised at trial or on appeal.”
851 So.2d at 613-14.
According to the Alabama Supreme Court’s decision in Ex parte Pierce, which was not modified by its more recent decision in Ex parte Beckworth, the circuit court correctly dismissed this claim pursuant to Rules 32.2(a)(3) and 32.2(a)(5), Ala. R.Crim. P., because it could have been raised at trial or on direct appeal but was not.
Moreover,
“A Brady [v. Maryland, 373 U.S. 83 (1963),] violation occurs where: (1) the prosecution suppresses evidence; (2) the evidence is favorable to the defendant and (3) material to the issues at trial. Stano v. Dugger, 901 F.2d 898, 899 (11th Cir.1990); Delap v. Dugger, 890 F.2d 285 (11th Cir.1989); United States v. Blasco, 702 F.2d 1315, 1327 (11th Cir.), cert. denied, 464 U.S. 914, 104 S.Ct. 275, 276, 78 L.Ed.2d 256 (1983); Ex parte Kennedy, 472 So.2d 1106, 1110 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).”
Williams v. State, 710 So.2d 1276, 1296-97 (Ala.Crim. App.1996).
Stallworth pleaded that Corazzini saw a black male exit the Diamond store at the time of Morton’s murder. However, the affidavit executed by Corazzini and attached to Stallworth’s second amended petition states that she saw the male exit the store at 12:00 p.m. Testimony was presented indicating that Morton’s murder occurred at approximately 1:00 p.m. and that customers saw her alive after 12:00 p.m. Corazzini’s testimony would be neither exculpatory nor material.[6] Thus, even if Co-razzini’s statement was suppressed, there was no Brady violation.
V.
Stallworth next argues that the circuit court erred in summarily dismissing his claim that his trial counsel was ineffective at the penalty phase of his capital-murder trial because counsel failed to present mitigation evidence.
Stallworth pleaded in his second amended petition that his trial counsel failed to present the following evidence: that his childhood was unstable and that he was neglected; that his mother was involved with men who were violent and abusive to her; that he was raised in poverty; that he was a caregiver to his mother; that he was subjected to physical and emotional abuse; and that he was a caring person. Stallworth did not set out specific acts that occurred in his life that would prove the assertions but merely made general assertions and at the end of each paragraph identified an individual. Specifically, Stall-worth pleaded that counsel should have presented the testimony of the following individuals:[7] (1) Ollie May Reed — Stall-worth’s mother, (2) Stephanie Rollin, (3) Cynthia Lauing, (4) Amy Lawrence, (5) Eunice Stallworth, (6) Shirley Nickson, (7) President Prim, (8) Vera James, (9) Deborah Pickens, (10) Theo Williams, (11) Randy Williams, and (12) Ines Holmes.
The State asserted in its answer that Stallworth ignored the evidence that counsel had presented in mitigation, that coun *78 sel is not ineffective for failing to present all mitigation evidence, and that Stallworth failed to plead how he was prejudiced. The circuit court summarily dismissed this claim citing Rules 32.6(b) and 32.7(d), Ala. R.Crim. P.
During Stallworth’s penalty phase before the jury, counsel presented the testimony of Stallworth’s mother, Ollie May Reed; Alex Lavon Baker, Stallworth’s younger brother; and Deborah Denise Pickens, Stallworth’s fianceé at the time of the murders.[8] Counsel also stated for the record that two other witnesses were due to appear but were not present. These witnesses were identified as President R. Prim and an unknown individual. (Trial 4715-16.) The record shows that counsel said that he had spoken to Prim on the telephone and was assured that he would be there momentarily. Counsel requested and was granted a short recess; however, Prim did not appear at the penalty-phase hearing.
Reed testified that Stallworth is the oldest of her 5 children; that he had a good relationship with his siblings and took care of them; that, when he was between the age of 5 and 8, he witnessed her being mistreated and beaten by men and he begged them to stop hurting his mother; that Stallworth sought help for her when she suffered from asthma when he was young; that Stallworth has asthma; that Stallworth was never a disciplinary problem; that Stallworth lived with his grandmother, her mother, until he was 18; that her uncle Prim was a father figure to Stallworth; that Stallworth was engaged to Deborah Pickens; that Stallworth and Pickens had a baby; that Stallworth took care of Pickens and the baby; that Stall-worth was close to his family; and that Stallworth was popular in the neighborhood.
Baker, Stallworth’s younger brother, testified that Stallworth is 10 years his senior; that when Stallworth was not working out of town on a shrimp boat, he spent a lot of time with him and his siblings; that Stallworth was kind to all the kids in the neighborhood; and that Baker loved his brother.
Pickens, Stallworth’s fiancée, testified that she had known Stallworth for about nine years; that they lived in the same neighborhood; that she first met Stall-worth when they were in high school; that Stallworth was popular around the neighborhood; that she had been engaged to Stallworth for three years; that they had a one-year-old daughter; that Stallworth is a wonderful father and was there when she needed him; that Stallworth spent a lot of time with her and the baby; and that Stallworth was caring and frequently did odd jobs for the older people in the neighborhood who needed help.
At the sentencing hearing before the judge, Stallworth’s counsel presented the testimony of seven friends and family members: (1) Shirley Dailey, (2) President Prim, (3) Ollie Mae Reed, (4) Deborah Pickens, (5) Anna Lee Jones, (6) Lena Stallworth Harvey, and (7) Sonya Marie Prim. Counsel also attempted to call Stall-worth’s employer as a witness but he was not present at the courthouse.
Dailey, a longtime friend of Stallworth, testified that Stallworth was a nice, respectful child. She asked the court to spare his life. Prim, Stallworth’s mother’s uncle, testified that Stallworth lived with him and his wife for two years, that Stall-worth never got into trouble, that Stall-worth was a good child, and that Stall- *79 worth went to Sunday school every week. Prim asked the court to spare Stallworth’s life. Reed, Stallworth’s mother, asked the court to spare her son’s life. Pickens, Stallworth’s fiancée, testified that she has a child with Stallworth, that Stallworth was a good person, that Stallworth needed time with his child, and she asked the court to spare Stallworth’s life.[9] Jones, a friend, testified that Stallworth was a good boy and that he looked after her. She asked the court to spare Stallworth’s life. Harvey, Stallworth’s great aunt, testified that Stallworth was an obedient and nice child, that he was never in trouble, that Stallworth was afraid of his own shadow, and that it would be an injustice to sentence him to death. Sonya Prim testified that Stallworth was a good person who tried to help everyone, that he never hurt anyone, and that the court should spare his life.
During the guilt phase, Stall-worth had also presented the testimony of two clinical psychologists. Dr. John William Davis, a clinical psychologist, testified that he performed intelligence and personality tests on Stallworth. It was his opinion that Stallworth had a full-scale IQ of 77, which means Stallworth is borderline mentally retarded. He said that Stall-worth was dependent on others, that he looked to others for guidance, that he was insecure, that he suffers from anxiety, and that he needs a structured environment. Dr. Daniel L. Koch, a clinical psychologist, testified that he was hired to determine whether Stallworth was highly suggestible as it related to his confession. It was Dr. Koch’s opinion that Stallworth “has significantly more suggestibility than does the average person.” (Trial R. 3664.)
“A trial court may summarily dismiss a post-conviction petition [on a claim of ineffective assistance of counsel] when it is clear upon the face of the petition itself or the exhibits or material from prior proceedings that there are no facts upon which the petitioner could prevail. Robertson v. State, 669 So.2d 11 (Miss. 1996). See also Taylor v. State, 782 So.2d 166, 168 (¶ 4) (Miss.Ct.App.2000).”
Fairley v. State, 812 So.2d 259, 262 (Miss.Ct.App.2002). “A petitioner’s failure to ‘show how, but for the attorneys’ errors, the results of the proceedings would have been different’ justifies a district court’s decision to summarily dismiss the ineffective assistance of counsel claim.” Everett v. State, 757 N.W.2d 530, 535 (N.D.2008) (quoting Hughes v. State, 639 N.W.2d 696, 699 (N.D.2002)). “[F]ailing to introduce additional mitigation evidence that is only cumulative of that already presented does not amount to ineffective assistance.” Jalowiec v. Bradshaw, 657 F.3d 293, 319 (6th Cir.2011) (citing Nields v. Bradshaw, 482 F.3d 442, 454 (6th Cir.2007)).
“ ‘[I]n order to establish prejudice, the new evidence that a [postconviction] petitioner presents must differ in a substantial way — in strength and subject matter — from the evidence actually presented at sentencing.’ Hill v. Mitchell, 400 F.3d 308, 319 (6th Cir.), cert. denied, 546 U.S. 1039, 126 S.Ct. 744, 163 L.Ed.2d 582 (2005). In other cases, we have found prejudice because the new mitigating evidence is ‘different from and much stronger than the evidence presented on direct appeal,’ ‘much more extensive, powerful, and corroborated,’ and ‘sufficiently different and weighty.’ Goodwin v. Johnson, 632 F.3d 301, 328, 331 (6th Cir.2011). We have also based *80 our assessment on ‘the volume and compelling nature of th[e new] evidence.’ Morales v. Mitchell, 507 F.3d 916, 935 (6th Cir.2007). If the testimony ‘would have added nothing of value,’ then its absence was not prejudicial. [Bobby v.] Van Hook, [558 U.S. 4, 12,] 130 S.Ct. [13,] 19 [ (2009) ]. In short, ‘cumulative mitigation evidence’ will not suffice. Landrum v. Mitchell, 625 F.3d 905, 930 (6th Cir.2010), petition for cert. filed (Apr. 4, 2011) (10-9911).”
Foust v. Houk, 655 F.3d 524, 539 (6th Cir.2011). See Johnston v. State, 63 So.3d 730, 743 (Fla.2011) (“[T]he substance of almost all the information now presented by Johnston was presented to the jury. Therefore, counsel was not deficient in failing to present additional mitigation evidence.”); Landrum v. Mitchell, 625 F.3d 905, 930 (6th Cir.2010) (“The petitioner must present new evidence that differs both in strength and subject matter from the evidence actually presented at sentencing, not just cumulative mitigation evidence.”); Jones v. State, 998 So.2d 573, 587 (Fla.2008) (“We have repeatedly held that counsel is not ineffective for failing to present cumulative evidence.”); Ford v. Hall, 546 F.3d 1326, 1328 (11th Cir.2008) (“Counsel is not required to call additional witnesses to present redundant or cumulative evidence.”); Havard v. State, 988 So.2d 322, 337 (Miss.2008) (“Not calling witnesses who will testify negatively for a client or who will testify to matters cumulative in nature is not deficient performance by counsel.”); Commonwealth v. Spotz, 587 Pa. 1, 71, 896 A.2d 1191, 1232 (2006) (“[A] defendant is not prejudiced by the failure of trial counsel to pursue cumulative evidence of the defendant’s background-”); Lyons v. State, 269 Ga.App. 27, 31, 602 S.E.2d 917, 921 (2004) (“Trial counsel’s failure to present cumulative evidence does not amount to ineffective assistance.”); Skillicom v. State, 22 S.W.3d 678, 683 (Mo.2000) (“Counsel is not ineffective for not putting on- cumulative evidence.”); Coulter v. State, 343 Ark. 22, 31, 31 S.W.3d 826, 832 (2000) (“[T]he omission of a witness when his or her testimony is cumulative does not deprive the defense of vital evidence.”) State v. Ferguson, 20 S.W.3d 485, 509 (Mo.2000) (“[C]ounsel’s failure to present additional evidence that would have been cumulative does not amount to ineffective assistance of counsel.”).
Given the extensive evidence counsel presented in mitigation, a large portion of which was cumulative to the mitigating evidence Stallworth pleaded should have been presented, this claim was properly dismissed because Stallworth failed to state a claim upon which relief could be granted. “[T]he notion that the result could have been different if only [counsel] had put on more than the nine witnesses he did, or called expert witnesses to bolster his case, is fanciful.” Wong v. Belmontes, 558 U.S. at 28.
VI.
Stallworth next argues that the circuit court erred in summarily dismissing his claims that his trial counsel was ineffective during the jury-selection process.
A.
First, Stallworth argues that his counsel failed to question the prospective jurors about their exposure to media coverage regarding the case. Stallworth pleaded the following in his second amended petition in regard to this claim:
“During the voir dire, defense counsel asked only the very first group of venire members questions about media exposure. At this time, defense counsel asked what the venire members knew outside of what the judge had told them; *81 whether news coverage had caused anyone to think that Stallworth was guilty; whether they were able to disregard any information about the cases that they had heard so far; and whether they had read the newspaper or heard anything about the case on television or radio. The record does not reflect verbal responses to the aforementioned questions for four members who became jurors in this case. This lack of follow-up by defense counsel in ascertaining the jurors’ responses, combined with the fact that defense counsel failed to ask any of the other three groups any questions about publicity, bespeaks both lack of preparation and poor advocacy. This performance was constitutionally deficient.”
(C.R. 52.)
In its answer, the State asserted the following:
“Stallworth ably outlines this Court’s extensive examination on pre-trial publicity, which led to the removal of two venire members and a third was successfully challenged for cause by Stallworth’s trial attorneys. He then acknowledges his trial attorneys’ additional follow-up, to which four of the jurors did not respond. Accordingly, his only claim concerns his trial attorneys’ failure to follow-up the failure to answer the follow-up questions, or more bluntly, their failure to continue belaboring a twice-addressed issue.
“ ‘Whether to conduct voir dire on a particular subject is, in most instances, a strategic decision.’ Thomas v. State, 766 So.2d 860, 877 (Ala.Crim.App.1998). Stallworth pleads no facts to show why it was unreasonable not to belabor the media issue after this Court and Stall-worth’s trial attorneys seemingly removed any possibly biased jurors. Thus, he fails to plead deficient performance, and the record certainly reflects reasonable performance. See Ala. R.Crim. P. 32.6(b), 32.7(d).
“Second, and just as obviously, Stall-worth fails to sufficiently plead facts that would prove prejudice. Again, Stallworth merely speculates that jury members ‘were saturated by the media coverage’ without offering any factual support for the speculation. Furthermore, Stallworth fails to name a single juror who was biased due to media exposure, as he is required to do to prove prejudice.”
(C.R. 153-54.) The circuit court found that this claim lacked specificity and was due to be dismissed pursuant to Rule 32.6(b), Ala. R.Crim. P.
In Washington v. State, 95 So.3d 26 (Ala.Crim.App.2012), the appellant asserted in his postconviction petition that his counsel was ineffective “for failing to conduct effective voir dire examination.” 95 So.3d at 63. In affirming the circuit court’s summary dismissal of this claim, this Court stated:
“The circuit court correctly summarily dismissed this claim because Washington failed to identify specific jurors by name; he failed to plead what should have been done during voir dire examination; and he failed to plead how he was prejudiced by counsel’s performance during the voir dire examination. See Rule 32.6(b), Ala. R.Crim. P.
“Moreover,
“ ‘Generally, “[a]n attorney’s actions during voir dire are considered to be matters of trial strategy,” which “cannot be the basis” of an ineffective assistance claim “unless counsel’s decision is ... so ill chosen that it permeates the entire trial with obvious unfairness.” ’
“Neill v. Gibson, 263 F.3d 1184, 1193 (10th Cir.2001) (quoting Nguyen v. *82 Reynolds, 131 F.3d 1340, 1349 (10th Cir. 1997)). ‘Counsel, like the trial court, is granted “particular deference” when conducting voir dire.’ Keith v. Mitchell, 455 F.3d 662, 676 (6th Cir.2006).”
Washington, 95 So.3d at 64. See also Moody v. State, 95 So.3d 827 (Ala.Crim. App.2011).
Stallworth failed to plead the identity of any juror who was biased against him as a result of counsel’s alleged failure to conduct an adequate voir dire; therefore, Stallworth failed to plead the full facts that would entitle him to relief. This claim was due to be summarily .dismissed pursuant to Rule 32.6(b), Ala. R.Crim. P.
Moreover, the record shows that counsel moved that the prospective jurors complete a nine-page juror questionnaire. (Trial C.R. 806.) However, the trial court allowed the jurors to complete a questionnaire that had been approved by the Alabama Supreme Court. (Trial R. 903.) (A copy of a sample juror questionnaire is contained in Sample Form 56 of the Appendix to the Alabama Rules of Criminal Procedure.) The record also shows that the circuit court questioned the jurors about their general qualifications to sit on the jury and the extent of their exposure to pretrial publicity regarding the case. Each juror who indicated that he or she had heard or read about the case was questioned individually at the bench about exposure to pretrial publicity and the ability to be impartial. (Trial R. 1182-1222.) After jurors who indicated that they could not be impartial were removed, the remaining jurors completed the approved juror questionnaire. The day after the questionnaires were completed, counsel then asked follow-up questions concerning the jurors’ responses on the questionnaires. The record shows that the jurors were questioned about their exposure to pretrial publicity in the case. This claim is refuted by the record and is without merit. McNabb v. State, 991 So.2d 313, 320 (Ala.Crim.App.2007) (holding that “because this claim was clearly refuted by the record, summary denial was proper pursuant to Rule 32.7(d), Ala. R.Crim. P.”).
B.
Second, Stallworth argues that the circuit court erred in summarily dismissing his claim that counsel was ineffective for failing to conduct an adequate voir dire to determine the views of prospective jurors on the death penalty.
Stallworth pleaded in his second amended petition that his trial counsel was ineffective because counsel failed to ensure that the jurors were “life qualified” or failed to ask whether the jurors would automatically vote for death. Stallworth pleaded:
“Defense counsel failed to take the steps necessary to identify potential jurors who would not impose a sentence other than death. Defense counsel relied solely on the Court’s questioning of venire members about their attitudes toward the imposition of the death penalty. Specifically, [the Court] asked the entire venire ‘if anyone had a fixed opinion against capital punishment.’ This question allowed the Court to excuse five venire persons as so-called ‘Witherspoon[ v. Illinois, 391 U.S. 510 (1968) ]- exeludables,’ because under no circumstances were they willing to impose the death penalty.
“Defense counsel never asked any questions of the entire venire pool or of the smaller groups to discover whether any prospective jurors would automatically impose the death penalty in a capital case. In fact, defense counsel did not ask any questions at all about the potential jurors’ views on the death pen *83 alty or sentencing generally-. Stall-worth’s attorneys failed to do so despite the prosecutor’s repeated questions regarding the potential jurors’ opposition to the death penalty and their ability to impose a death sentence.”
(C.R. 53-54.)
The State asserted the following in its answer:
“[T]he State — as the defendant in this proceeding — has the right to be informed of the specific juror in question so that the State can prepare to defend against the petitioner’s claims. Thus, it is the petitioner’s duty under Rule 32.6(b)[, Ala. R.Crim. P.,] to identify the juror, by name, in the petition so the State can prepare to defend against the claim. The State pointed this fact out in Stallworth’s first amended petition; yet, Stallworth still fails to sufficiently plead his claim because he refuses to identify specific jurors.”
(C.R. 156.)
To survive summary dismissal of a post-conviction claim, a petitioner must comply with the full-fact pleading requirements of Rule 32.6(b), Ala. R.Crim. P. “Unlike the general requirements related to civil cases, the pleading requirements for postconviction petitions are more stringent.” Daniel v. State, 86 So.3d 405, 410-11 (Ala.Crim. App.2011) (footnote omitted). Stallworth was required to plead full facts to support each claim; therefore, he was required to identify each juror who served on the jury who was biased against him. See Washington, supra; Daniel, supra. Stallworth failed to do so.[10] Further, in the context of an ineffective-assistance-of-counsel claim, Stallworth failed to plead any facts that, if true, would establish a reasonable probability that the outcome of the trial would have been different. See Hyde v. State, 950 So.2d 344, 356 (Ala.Crim.App. 2006) (“To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must ‘identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,’ Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ 466 U.S. at 694, 104 S.Ct. 2052.”). Thus, this claim was properly dismissed according to Rule 32.6(b), Ala. R.Crim. P.
C.
Stallworth next argues that the circuit court erred in summarily dismissing his claim that his trial counsel was ineffective for failing to question the prospective jurors about their possible racial bias.
The record shows that Stallworth’s trial counsel moved that he be allowed to question the jurors extensively about racial bias. (Trial C.R. 290.) That motion was granted. (Trial R. 338.) On direct appeal, this Court considered the issue of whether the circuit court improperly restricted Stallworth’s voir dire related to racial bias. This Court stated:
*84 “Stallworth was allowed to question the jurors extensively about possible racial bias. However, the trial court would not allow Stallworth to ask a specific question about whether any of the prospective jurors had ever made a negative comment about blacks.
“ ‘ “In selecting a jury for a particular case, ‘the nature, variety, and extent of the questions that should be asked prospective jurors’ must be left largely within the sound discretion of the trial court. Peoples v. State, 375 So.2d 561 (Ala.Crim.App.1979). In other words, the scope of the voir dire examination of the jury venire is within the broad discretion of the trial court. Bowens v. State, 54 Ala.App. 491, 309 So.2d 844 (1974), cert. denied, 293 Ala. 746, 309 So.2d 850 (1975); Witherspoon v. State, 356 So.2d 743 (Ala.Crim.App.1978); Ervin v. State, 399 So.2d 894 (Ala.Crim.App.), cert. denied, 399 So.2d 899 (Ala.1981).” ’
“Hall v. State, 820 So.2d 113, 124 (Ala.Crim.App.1999), aff'd, 820 So.2d 152 (Ala.2001), quoting Bracewell v. State, 447 So.2d 815, 821 (Ala.Crim.App.1983), aff'd, 447 So.2d 827 (Ala.1984), cert. denied, 469 U.S. 980, 105 S.Ct. 382, 83 L.Ed.2d 318 (1984).
“There is no evidence that the trial court’s disallowance of this specific question resulted in any prejudice to Stall-worth. The trial court did not abuse its discretion.”
Stallworth v. State, 868 So.2d 1128, 1148 (Ala.Crim.App.2001).
This Court specifically held that counsel extensively questioned the jurors about racial bias. “Because the substantive claim underlying the claim of ineffective assistance of counsel has no merit, counsel could not be ineffective for failing to raise this issue.” Lee v. State, 44 So.3d 1145, 1173 (Ala.Crim.App.2009). The circuit court correctly dismissed this claim because it failed to state a claim upon which relief could be granted.
D.
Stallworth next argues that the circuit court erred in summarily dismissing his claim that his trial counsel was ineffective for failing to strike for cause or to use a peremptory strike to remove certain jurors who, he asserts, were biased in favor of the State.
In his second amended petition, Stall-worth pleaded that his counsel should have struck a juror who knew the prosecutor, a juror who knew a lieutenant who testified for the State, and a juror who knew several State witnesses. Stallworth did not specifically identify any of the challenged jurors by name.
The State asserted in its answer that this claim was insufficiently pleaded because counsel failed to identify the jurors who should have been challenged for cause or removed by the use of peremptory strikes. The circuit court found that this claim was due to be dismissed pursuant to Rules 32.6(b) and 32.7(d), Ala. R.Crim. P.
In his brief to this Court, Stallworth attempts to do what he should have done in his petition — he identifies by name the challenged jurors. “This court will not consider an argument raised for the first time on appeal; its review is limited to evidence and arguments considered by the trial court.” Myrick v. State, 787 So.2d 713, 718 (Ala.Crim.App.2000).
Moreover,
“The attorney’s actions during voir dire are considered to be a matter of trial strategy. A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel’s tactics are shown to be ‘so *85 ill chosen that it permeates the entire trial with obvious unfairness.’ ”
Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir.1995) (quoting Garland v. Maggio, 717 F.2d 199, 206 (5th Cir.1983)).
This claim was due to be summarily dismissed pursuant to Rule 32.6(b), Ala. R.Crim. P., because Stallworth failed to plead the full facts that would entitle him to relief.
E.
Stallworth next argues that the circuit court erred in summarily dismissing his claim that trial counsel was ineffective for failing to question the jury panels consistently.
Stallworth pleaded the following concerning this claim:
“While questioning group three, defense counsel asked only a single question to the entire group of potential jurors, deferring to the questions asked by the State as sufficient for purposes of learning pertinent information about the prospective jurors. For example, if Stallworth’s attorneys had asked all four panels about racial bias, such questioning would have revealed that Juror A was prejudiced.[11] Without consistent questioning of each venire panel, defense counsel did not have the necessary information to make informal comparisons of jurors to determine which jurors to strike. Had defense counsel properly questioned each venire panel, and properly struck jurors who were either prejudiced against the defendant or biased in favor of the State, there is a reasonable probability that the results of the trial would have been different. Inconsistent questioning is not adequate, and this failure is constitutionally deficient.”
(C.R. 58-69.)
The State asserted in its answer that this claim was insufficiently pleaded because Stallworth failed to identify by name any juror who was biased; thus, he failed to plead the full facts entitling him to relief. This claim was due to be summarily dismissed pursuant to Rule 32.6(b), Ala. R.Crim. P.
VII.
Stallworth next argues that the circuit court erred in summarily dismissing his claim that his trial counsel was ineffective for failing to retain an expert to examine the knife recovered from Stallworth’s fiancée’s house — the house where Stall-worth was living at the time of the murders.
Stallworth pleaded the following in his second amended petition:
“Stallworth’s attorneys ... failed to hire a pathologist, or corresponding expert, to analyze the hilt of the knife recovered under Stallworth’s mattress to compare it to the autopsy photographs to determine whether Duke’s and Morton’s wounds were consistent with the knife found in Stallworth’s home. B. Hunt Scheuerman, MD, is an expert in forensic pathology and, upon analysis, will testify as to whether the wounds are consistent with the knife.”
(C.R. 46-47.)
The State asserted the following in its answer:
“Stallworth’s attorneys presented the State’s witnesses and the jury with alternate knives similar to Stallworth’s knife to prove that the alternate knives *86 could have also been the murder weapon; thereby disproving the theory that the State’s exhibit was the true murder weapon. In fact, Stallworth’s attorneys successfully got both State experts to testify that it was possible the defense knives could have caused the same, or at least, similar wounds. This allowed his attorneys to argue any of several knives could have been the murder weapon during closing arguments.
“Thus, it was a reasonable strategy to attack the State’s case by having two State experts admit it was possible (albeit less likely) that alternate knives could have caused the victim’s wounds. After those concessions, it was a reasonable strategic choice not to hire another expert, who might have also testified although any of the knives could have made similar cuts; the State’s exhibit (that is, Stallworth’s knife) was most likely the murder weapon. Stallworth does not acknowledge this strategy, much less plead any facts to show why it was unreasonable; thus, he fails to sufficiently plead deficient performance. See Ala. R.Crim. P. 32.6(b). Furthermore, because reasonable strategic choices are ‘virtually unchallengeable’ under Strickland[ v. Washington, 466 U.S. 668 (1984)] (regardless of whether they were ultimately effective), this Court should summarily dismiss this claim even if it was sufficiently pleaded. Ala. R.Crim. P. 32.7(d); Strickland, 466 U.S. at 690-91.”
(C.R. 148-49.) The circuit court summarily dismissed this claim pursuant to Rules 32.6(b) and 32.7(d), Ala. R.Crim. P.
The record of Stallworth’s trial shows that defense counsel questioned Dr. Julia Gooden, the forensic pathologist who conducted the autopsy on Linda Morton, about whether the injuries inflicted on Morton could have been caused by a “double-edged” knife, and she said that it was possible. Counsel then produced several different knives and asked Dr. Gooden if the wounds could have been inflicted by those knives. Also, counsel questioned Dr. James C.V. Downs, the medical examiner who conducted the autopsy on Nancy Dukes, about whether her injuries could have been caused by a “serrated knife.” Counsel then asked Dr. Downs if the injuries could have been caused by the knives he had shown to Dr. Gooden. Both State pathologists indicated that the wounds could have been caused by the knives counsel had brought into court.
During Stallworth’s defense case, counsel recalled Lt. Mack with the Baldwin County Sheriffs office. Lt. Mack testified that there was a drainage pond behind the Diamond store and that several times after Morton’s murder he went to that pond to look for evidence. In April 1998, after the pond had dried up, Mack said, he recovered a knife.
“ ‘[H]ow to deal with the presentation of an expert witness by the opposing side, including whether to present counter expert testimony, to rely upon cross-examination, to forego cross-examination and/or to forego [sic] development of certain expert opinion, is a matter of trial strategy which, if reasonable, cannot be the basis for a successful ineffective assistance of counsel claim.’
“Phillips v. State, 285 Ga. 213, 222-223, 675 S.E.2d 1 (2009) (citation omitted). Moreover, ‘[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.’ Strickland[ v. Washington,] 466 U.S. [668,] 689 [ (1984) ].”
*87 Brown v. State, 292 Ga. 454, 456, 738 S.E.2d 591, 594 (2013). “[T]he failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel.” State v. Nicholas, 66 Ohio St.3d 431, 436, 613 N.E.2d 225, 230 (1993).
“A defendant’s lawyer does not have a duty in every case to consult experts even if the government is proposing to put on expert witnesses.... There may be no reason to question the validity of the government’s proposed evidence or the evidence may be so weak that it can be demolished on cross-examination.”
Miller v. Anderson, 255 F.3d 455, 459 (7th Cir.2001) (citations omitted).
“The State’s expert testified that the murder weapon was a revolver from which spent cartridges must be ejected manually. The State argued at trial that Cornell showed malice by taking the time to manually eject the spent cartridge and leave it at the victim’s feet after shooting him. Cornell claims that this scenario was not possible because he used a semi-automatic pistol that ejected spent cartridges automatically.
“Trial counsel was not deficient in choosing to cross-examine the State’s expert on this issue rather than calling her own expert. Trial counsel’s ‘decision to avoid the battle of the experts and rely upon cross-examination of the State’s experts’ is an acceptable tactic if not ‘patently unreasonable.’ Counsel’s decision in this trial was not patently unreasonable.”
Cornell v. State, 277 Ga. 228, 229, 587 S.E.2d 652, 654 (2003) (footnote omitted).
The record clearly shows that counsel conducted a thorough cross-examination of both State experts and challenged the State’s theory that the knife found in Stall-worth’s fiancée’s house was the only knife that could have been the murder weapon. Accordingly, the circuit court correctly dismissed this claim because there was no material issue of fact or law that would entitle Stallworth to relief. Rule 32.7(d), Ala. R.Crim. P.
VIII.
Stallworth next argues that the circuit court erred in summarily dismissing his claim that counsel’s closing argument-in the penalty phase was ineffective because counsel relied solely on mercy.
In his second amended petition, Stall-worth pleaded the following:
“The closing arguments during the sentencing hearings of a capital trial are especially critical because they are the last opportunity defense counsel have to communicate to the jury and the judge the value of the defendant’s life to his family, friends, and community. Defense counsel’s closing arguments before both the jury and the judge were ineffective for not incorporating any of the particularized circumstances of Stall-worth’s life into a coherent mitigation case. These inadequate closings were the product of insufficient investigation and witness preparation. By failing to reference any of the mitigating circumstances in Stallworth’s life, defense counsel provided neither the judge nor the jury with a final reminder of the hardships Stallworth had experienced and the sacrifices he had made on behalf of loved ones. Such a reminder could have meant the difference between life and death.”
(C.R. 63.)
In its answer, the State asserted:
“Stallworth’s trial attorneys’ strategy at sentencing was to present evidence that Stallworth was a loving, responsible, and well-liked person who deserved mercy and could be a benefit to the *88 prison culture if given a life sentence. In his amended petition, Stallworth now claims that his Rule 32 attorneys’ idea of a closing argument strategy — i.e., Stall-worth’s childhood troubles — is better than his trial attorneys’ strategy.
“This Court should summarily dismiss this claim under Strickland’s [v. Washington, 466 U.S. 668 (1984), ] performance element, regardless of pleading, because the subject of penalty phase closing arguments is trial strategy that is not subject to second guessing in a Rule 32 petition. See Ala. R.Crim. P. 32.7(d); Strickland, 466 U.S. at 689 (‘a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy’). Here, Stallworth’s trial attorneys determined that their best option under the circumstances was to plead for mercy, based in large part on Stallworth’s poor childhood and his subsequent love and care for his family and the community. Under Strickland, this Court should not second guess that strategy in a Rule 32 petition.”
(C.R. 166.)
In Yarborough v. Gentry, 540 U.S. 1, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003), the United State Supreme Court reversed a holding of a California court that counsel was ineffective during closing arguments. In noting the rarity of such a finding, the court stated:
“The right to effective assistance extends to closing arguments. See Bell v. Cone, 535 U.S. 685, 701-02 (2002); Herring v. New York, 422 U.S. 853, 865 (1975). Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel’s tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should ‘sharpen and clarify the issues for resolution by the trier of fact,’ id., at 862, but which issues to sharpen and how best to clarify them are questions with many reasonable answers. Indeed, it might sometimes make sense to forgo closing argument altogether. See Bell, supra, at 701-702. Judicial review of a defense attorney’s summation is therefore highly deferential — and doubly deferential when it is conducted through the lens of federal habeas.”
540 U.S. at 5-6.
Courts have held that an attorney is not ineffective in relying on a mercy argument in closing.
“Counsel, instead of arguing Powers’s family and educational background, chose to beg the jury for mercy. He beseeched the jury to consider the finality of death and begged the jurors to search their conscience. He argued that the evidence did not support the aggravating circumstances, and he asked the jury to consider the mitigating factors that were submitted. In Manning v. State, 735 So.2d 323, 347-48 (Miss.1999), this Court found that trial counsel’s strategy of pleading for mercy was not a poor strategic choice based on the existing facts.”
Powers v. State, 883 So.2d 20, 35 (Miss. 2003).
“[Wjhere defense counsel is faced with overwhelming evidence of his client’s guilt, including the client’s confession, it is not ineffective assistance of counsel to submit that defendant to the mercy of the jury. People v. Mapp, 47 N.Y.2d 939, 419 N.Y.S.2d 947, 393 N.E.2d 1020 *89 (Ct.App.1979); Rickenbacker v. Warden, 550 F.2d 62, 66 (2d Cir.1976) (brief closing argument held sufficient), cert. denied, 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977).”
Solomon v. Commissioner of Correctional Services, 786 F.Supp. 218, 228 (E.D.N.Y. 1992). See Coleman v. Brown, 802 F.2d 1227, 1236 (10th Cir.1986).
In this case, the circuit court found three aggravating circumstances: (1) that the murders were committed during a robbery; (2) that Stallworth was under a sentence of imprisonment when he committed the murders; and (3) that the murders were especially heinous, atrocious, or cruel as compared to other capital murders. The circuit court found. no statutory or nonstatutory mitigation evidence after considering the evidence Stallworth presented. Given the circumstances of this casé, counsel was not ineffective for relying on mercy in the closing.
IX.
Finally, Stallworth argues that the circuit court erroneously failed to sanction the State for failing to preserve evidence and erroneously failed to rule on his motion for sanctions. These arguments are not preserved for appellate review. After the circuit court denied relief on Stall-worth’s Rule 32 petition without ruling on his motion for sanctions, Stallworth did not file a motion to reconsider, objecting to the circuit court’s failure to rule on his motion for sanctions. Accordingly, Stallworth’s argument that the circuit court erroneously failed to rule on his motion is not properly preserved for this Court’s review. See Broadnax v. State, 130 So.3d 1232, 1241 (Ala.Crim.App.2013) (“The record reflects that Broadnax did not raise this issue in the circuit court, by way of post-judgment motion, or otherwise. Cf. Loggins v. State, 910 So.2d 146, 149 (Ala.Crim. App.2005) (recognizing a motion to reconsider as a valid postjudgment motion in the Rule 32 context). It is well settled that ‘[t]he general rules of preservation apply to Rule 32 proceedings.’ Boyd v. State, 913 So.2d 1113, 1123 (Ala.Crim.App.2003). See also Slaton v. State, 902 So.2d 102, 107-08 (Ala.Crim.App.2003) (holding that the appellant’s claim that the circuit court erred in adopting State’s proposed order was not preserved for review when it was never presented to the circuit court). Therefore, this issue was not properly preserved for this Court’s review and will not be considered.”).
Likewise, Stallworth failed to preserve his argument that the State should have been sanctioned for failing to preserve evidence. It is well settled that “ ‘[t]o preserve an issue for appellate review, the issue must be timely raised and specifically presented to the trial court and an adverse ruling obtained.’ ” Cochran v. State, 111 So.3d 148, 153-54 (Ala.Crim.App.2012) (quoting Mitchell v. State, 913 So.2d 501, 505 (Ala.Crim.App.2005)). An issue is not properly preserved for appellate review when the appellant failed to obtain an adverse ruling. McWhorter v. State, 142 So.3d 1195, 1210 (Ala.Crim.App. 2011). Here, Stallworth never obtained an adverse ruling on his motion for sanctions and did not object to the circuit court’s failure to rule. Therefore, this issue is not preserved for this Court’s review.
For the reasons stated in Part I of this opinion, this case is remanded to the Baldwin Circuit Court for that Court to make specific findings of fact as to the three claims that were the subject of the post-conviction evidentiary hearing. Due return should be filed in this Court within 60 days from the date of this opinion.
AFFIRMED IN PART; REMANDED WITH DIRECTIONS.
*90 WELCH, KELLUM, and BURKE, JJ., concur.
JOINER, J., concurs specially, with opinion.

. The postconviction case-action summary reflects that the original Rule 32 petition was filed on June 22, 2004, and an amended petition was filed on October 7, 2005. However, the only petition contained in the certified record is the second amended petition filed in June 2006.

. After Judge James Reid issued this order he retired from the bench. Judge Reid’s successor, the Honorable Jody Wade Bishop, took office on January 15, 2013.

. “EDTA is the disodium salt of ethylenedia-mine tetraacetic acid. EDTA, a multi-purpose excipient, is widely known as a chelating agent.” Senju Pharmaceutical Co. Ltd. v. Apo-ta* Inc., 836 F.Supp.2d 196, 200 (D.Del. 2011). Stallworth testified at trial that police planted the blood found on his jacket. Counsel pleaded in Stallworth’s postconviction petition that the presence of EDTA would show a blood preservative in the blood, and show, thus, that the blood had to have been planted by the State.

. This Court may take judicial notice of its records of Stallworth’s direct appeal. See *69 Nettles v. State, 731 So.2d 626, 629 (Ala.Crim.App.1998).

. Stallworth asserted that the bell was not tested for any possible fingerprints.

. Corazzini’s testimony is discussed in greater detail in Part III.B. of this opinion.

. Stallworth did not plead what connection these individuals had to him.

 This Court may take judicial notice of the record in Stallworth's direct appeal. See Wilkerson v. State, 70 So.3d 442, 448 n. 2 (Ala.Crim.App.2011).

. Pickens is referred to in the transcript both as Stallworth’s wife and as Stallworth’s fian-cée.

. In his response to the State's motion to dismiss, Stallworth identified a juror that he believed would not consider a sentence of life in prison without the possibility of parole. (C. 225.) This Court has repeatedly explained that “ ' "Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.”'” Davis v. State, 44 So.3d 1118, 1124 (Ala.Crim.App.2009) (quoting Boyd v. State, 913 So.2d 1113, 1125 (Ala.Crim.App. 2003), quoting in turn Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App. 1999)(emphasis added)).

. Stallworth stated in his petition that he was protecting the jurors' anonymity by not using their names.